UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARVIN R. MACHUCA,

                Petitioner,

      -against-

GERARD JONES,

                Respondent.
---------------------------------------------------------------X

FILED
CLERK
3:59 pm, Feb 24, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM AND ORDER**
20-CV-3899 (GRB)

**GARY R. BROWN, United States District Judge:**

      Petitioner Marvin R. Machuca ("Petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence for one count of Criminal Sexual Act in the First Degree in the Supreme Court of the State of New York, County of Suffolk (the "trial court"). On this petition, Petitioner raises denial of his right to a fair trial, based upon evidentiary rulings denying his right to present a defense.[1] Because this claim is procedurally barred and substantively without merit, and it does not implicate a procedure or decision that was contrary to, or an unreasonable application of, clearly established federal law, the petition is denied.

**I. FACTUAL BACKGROUND**

      A review of the petition, filings by the Respondent and the state court record reveals that the Petitioner was convicted by a jury after trial, during which the prosecution introduced evidence demonstrating that on June 17, 2007, Petitioner entered the bedroom of his step-daughter, twelve-year old M.C., and, while M.C. was asleep next to her younger sister, Petitioner pulled down her

---

[1] In his petition, Petitioner does not expand his claim beyond stating he was denied his right to a fair trial in violation of the Sixth Amendment, however he incorporates by reference his fair trial appellate claim by attaching his appellate brief. Pet. at 6.

1

pajama pants and underwear and put his mouth on her vagina. (Tr.[2] 494-98.) Petitioner then tried to put his fingers in M.C.'s vagina, but she pushed his fingers away and Petitioner left the room. (Tr. 499.) M.C. did not disclose the incident until she told her aunt in 2009 that Petitioner had touched her. (Tr. 500.) Later, on June 20, 2015, M.C. reported the sexual abuse after police had been called to the family home during an unrelated altercation between M.C.'s family and Petitioner. (Tr. 504-08.)

Prior to trial, the prosecution informed the trial court that although it had no *Molineux* evidence for its direct case, should defense counsel argue that M.C.'s claims against Petitioner were part of a conspiracy between M.C. and her family for the purpose of having him arrested and deported, the prosecution would offer evidence[3] to rebut such an argument. (Tr. 6-11.) The trial court did not rule on the admissibility of the evidence, and instead stated it would make an admissibility ruling at the appropriate time during trial. (Tr. 11-14.) During cross-examination of M.C., the trial court precluded defense counsel from questioning M.C. regarding: (1) whether M.C.'s mother was dating anyone following her separation from Petitioner; (2) whether M.C.'s mother changed the locks to the family home; (3) where Petitioner was living on June 20, 2015; and (4) inconsistencies between M.C.'s testimony and police paperwork as inadmissible hearsay. (*See generally* Tr. 526-42.)

After the prosecution rested, and defense counsel's motion to dismiss was denied, the defense presented a case. The trial court precluded defense counsel from calling Elaidia Salmoron[4]

---

[2] "Tr." refers to the trial transcript in *People v. Machuca* held in December 2016.
[3] Specifically, the prosecution expected to introduce testimony from M.C.'s aunt that M.C. made a disclosure to her in 2009, and evidence from another alleged victim, M.C.'s cousin, who was too young to give competent testimony. M.C.'s 2015 disclosure to the police was partially motivated by a cousin disclosing sexual abuse by Petitioner. Ultimately, M.C.'s aunt did not testify regarding the 2009 disclosure, and no evidence from M.C.'s cousin was presented during trial.
[4] Elaidia Salmoron rented a room in the family home where the dispute between M.C.'s family and Petitioner took place and was present during the altercation on June 20, 2015. (Tr. 672-74.) Defense counsel proffered Salmoron's testimony to refute the credibility of M.C.'s June 20, 2015 report to police. (Tr. 642-43.) According to defense

2

as a witness, ruling that Salmoron's testimony was inadmissible as irrelevant, hearsay, and speculation. (Tr. 681-91.) Petitioner testified in his own defense. (*See generally* Tr. 700-74.)

Following the conviction to one count of Criminal Sexual Act in the First Degree, in violation of Penal Law §§ 130.50(4), Petitioner was sentenced to six years imprisonment with ten years post-release supervision. *See* Sentencing Tr., DE 4-30.

The petitioner pursued an appeal in the state court system; the Appellate Division affirmed Petitioner's judgment of conviction and held that Petitioner's fair trial claim was unpreserved for appellate review. *People v. Herrera-Machuca*, 181 A.D.3d 901, 901-02, 119 N.Y.S.3d 886, 886 (2020), *leave to appeal denied*, 35 N.Y.3d 1027, 149 N.E.3d 875 (2020). However, the Appellate Division found that

> [i]n any event although a criminal defendant is guaranteed the right to confront adverse witnesses through cross-examination, the trial court has broad discretion to limit the scope of cross-examination when the questions are irrelevant or only marginally relevant, concern collateral issues, or pose a danger of misleading the jury. Here, the court providently exercised its discretion in limiting the cross-examination of the complainant because the excluded line of questioning, by which the defendant would have attempted to establish that the complainant had a motive to fabricate her testimony, was too remote and speculative and lacked any factual basis. Upon our review of the record, we conclude that the court's

---

counsel, Salmoron allegedly overheard a conversation between M.C.'s mother and aunts where they said that they wanted to get revenge on Petitioner by having him arrested, that M.C. was a party to that conversation, and that M.C. agreed to further the family's plan of revenge and to deprive Petitioner of his property by having him arrested. (Tr. 642-43, 656-60.) The Court explicitly stated that it would only permit Salmoron's testimony to the extent that she overheard that the family conspired to lie to the police. (Tr. 659-60.) At the prosecution's request, the trial court heard Salmoron's testimony outside the presence of the jury to determine its admissibility. (Tr. 669-70.) During the court's inquiry, Salmoron testified that, after the police left, M.C.'s aunt told M.C.: "Today is the day that we have to fix everything because when we go to the court you can revenge with him and can you [sic] send him to jail. And when he is in jail, just because you are the oldest daughter, you can take everything, all the properties that he has in El Salvador and everything else." (Tr. 675-76.) When the court inquired whether Salmoron heard M.C. say that she wasn't telling the truth, she responded "I don't know. I'm just telling you what I heard. I don't know what she said." (Tr. 677.) When the court pressed further whether M.C. was told to lie, Salmoron consistently responded that she didn't know. (Tr. 677-78.) The court asked Salmoron whether she heard anyone tell M.C. to lie that Petitioner sexually abused her, Salmoron testified: "I didn't hear that. I don't know if they said that, but I heard about the properties." (Tr. 679.) Based on the inquiry, the trial court precluded Salmoron's testimony on the grounds that it was irrelevant because it failed to establish there was a conspiracy to lie, the conversation in question occurred after the police left and after the disclosure was made, and there was no indication that the disclosure was, in fact, a lie. (Tr. 688-91.)

3

> rulings did not deprive the defendant of the right to present a defense.

*Herrera-Machuca*, 181 A.D.3d at 902 (internal citations omitted).  Petitioner also filed a C.P.L. § 440.10 motion, seeking to vacate his judgment of conviction on the grounds that (1) his sentence was harsh and excessive; and (2) an actual innocence claim based on the ineffective assistance of counsel, which was denied in its entirety.  (*People v. Herrera-Machuca*, Dec. and Order, (Sup. Ct. Suffolk County, Dec. 5, 2019), D.E. 4-42).

## II. DISCUSSION

### A. Standard of Review

This petition is reviewed under the well-established standard of review of habeas corpus petitions, including the authority of this Court to review such matters, the application of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the exhaustion doctrine, the independent and adequate procedural bar, the cause and prejudice exception, AEDPA deference, the evaluation of claims of ineffective assistance of counsel and Brady violations, and the liberal construction afforded to filings by *pro se* petitioners, as more fully discussed in *Licausi v. Griffin*, 460 F. Supp. 3d 242, 255–60 (E.D.N.Y. 2020), *appeal dismissed*, No. 20-1920, 2020 WL 7488607 (2d Cir. Nov. 17, 2020).  The discussion of these principles set forth in *Licausi* is incorporated herein by reference.

### B. The Instant Petition

As noted, petitioner seeks habeas relief on the following ground: (1) he was deprived his right to a fair trial and to present a defense.  Even according the petition the solicitous treatment afforded to *pro se* pleadings, Petitioner's claim does not support habeas relief.  As an initial matter,

4

Petitioner's claim was denied based upon an independent and adequate state law ground,[5] and is thus procedurally defaulted.[6] Petitioner cannot proceed on a claim subject to the procedural bar, as Petitioner has failed to demonstrate (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To the extent his factually-based claim was fully considered by the state court, such a determination must be given deference by this Court under the AEDPA. *Herrera-Machuca*, 181 A.D.3d at 902. Even addressing Petitioner's claim on its merits in an abundance of caution, Petitioner cannot demonstrate that the Appellate Division's decision was contrary to, or in violation of, clearly established federal law, and, as such, his claim does not warrant relief.[7]

Thus, the petition is denied in its entirety.

**IV. CONCLUSION**

Because the Court has considered all of Petitioner's arguments and found them meritless, the petition is DENIED. A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied any constitutional rights. *See* 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order as to those issues would not be taken in good

---

[5] A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A procedural rule is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotations omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-63 (1989) (internal quotations omitted).

[6] Under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

[7] The trial court's curtailment of M.C.'s cross-examination and preclusion of Elaidia Salmoron's testimony did not violate Petitioner's right to present a defense. *See United State v. Scheffer*, 523 U.S. 303, 308 (1998) ("[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve.") (internal quotations and citations omitted).

faith, and thus *in forma pauperis* status is denied for the purposes of any appeal on those grounds. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is respectfully directed to mail a copy of this Order to Petitioner and to close the case.

**SO ORDERED.**

Dated: February 24, 2022
       Central Islip, New York

                                                 _Gary R. Brown_
                                                 HON. GARY R. BROWN
                                                 UNITED STATES DISTRICT JUDGE